Michael D. Mayfield (Idaho No. 7857)
Brett L. Tolman (Utah No. 8821) *Pro Hac Vice (to be filed)*
John W. Mackay (Utah No. 6923) *Pro Hac Vice (to be filed)*
Matthew R. Lewis (Utah No. 7919) *Pro Hac Vice (to be filed)*
**RAY QUINNEY & NEBEKER, P.C.**
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
E-mail: mmayfield@rqn.com
 btolman@rqn.com
 jmackay@rqn.com
 mlewis@rqn.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| JOEL R. ROBISON, an individual, STACEY H. ROBISON, an individual, and THE LEGACY NETWORK, LLC, an Idaho Corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>W. ROBERT LEMKE, and UNKNOWN AGENT DOES 1-10, inclusive,<br><br>Defendants. | **COMPLAINT**<br><br>**(FILED UNDER SEAL)**<br><br><br><br>Case No. _____<br><br>Judge: _____ |

Joel R. Robison, Stacey H. Robison and The Legacy Network, LLC ("TLN"), (collectively referred to as "Plaintiffs") by and through their attorneys, Ray Quinney & Nebeker, P.C., complain and allege for causes of action against Defendants, W. Robert Lemke ("Lemke"),

and Unknown Agent Does 1-10, inclusive, (also collectively referred to as "Defendants") as follows:

## PRELIMINARY STATEMENT

This is a civil rights action in which Plaintiffs seek relief for Defendants' violation of their rights guaranteed by the United States Constitution, specifically those enumerated in the Fourth Amendment, which rights are further secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983 and § 1988, and by the laws and the Constitution of the State of Idaho. Specifically, this is an action at law to redress a deprivation under color of statute, ordinance, regulation, custom, or usage of right, privileges, and immunities secured to Plaintiffs by the Fourth, Fifth and Fourteenth Amendments of the Constitution of the United States, and under Article I § 17 of the Constitution of the State of Idaho. This Complaint also seeks relief for improper activities taken by agents after they were terminated from law enforcement and acting in their individual capacities. As a result of Defendants' unlawful conduct, Plaintiffs seek damages, both compensatory and punitive, affirmative relief, an award of attorney's fees and costs, and any other and further relief as this Court deems just and equitable.

## PARTIES

1. Plaintiff Joel R. Robison ("Mr. Robison") is an individual residing in the State of Idaho. His residence is located in Rexburg, Idaho. Together with his father and brother, he manages his family's insurance business, TLN.

2. Plaintiff Stacey H. Robison ("Mrs. Robison") is an individual residing in the State of Idaho. Her residence is located in Rexburg, Idaho. She is married to Plaintiff Joel R. Robison.

3. Plaintiff TLN is an Idaho Corporation with its principal places of business in Idaho Falls and Rexburg, Idaho. TLN engages in the business of selling life and casualty insurance to clients throughout the United States.

4. Defendant W. Robert Lemke is an individual residing in the State of Idaho. Lemke was previously employed by the Idaho Department of Insurance ("DOI").

5. Defendant Unknown Agent Does 1 through 10 are identified as unnamed agents and/or officers who have taken action under color of state and/or federal law to deprive Plaintiffs of their constitutional rights, and who are currently unknown to Plaintiffs. Plaintiffs will amend this action to identify said Agent Does upon ascertainment of their true identity. Upon information and belief, such various unnamed agents acted in their capacity as federal agents in this action. As such federal agents' identities become known, Plaintiffs will amend this Complaint accordingly to include claims stemming from the implied right of action against federal agents as set out by the United States Supreme Court in Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971).

6. This action is brought against Does 1 through 10 in their official capacities. Their authority to act was derived from the United States Government and/or the State of Idaho.

7. Plaintiffs will serve notice of their pendant state claims, if any, against Defendants pursuant to Idaho law. These claims are present or will be amended into this Complaint at a later time.

8. Any claim of immunity from this action is wholly without merit. The acts alleged herein are violations of the Plaintiffs' Constitutional rights. Since the Defendants have acted outside their constitutional limitations, they have lost their umbrella of immunity in this case and are ripe for suit.

## JURISDICTION AND VENUE

9. This action arises under the Constitution and laws of the United States, including 42 U.S.C. §§ 1983, 1988, and the Constitution and laws of the State of Idaho. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

10. The claims made in this Complaint occurred and arose in the State of Idaho, in this District. Venue is therefore proper under 28 U.S.C. § 1391.

11. This action also seeks redress for violations of Plaintiffs' Constitutional rights secured by the Idaho Constitution. Specifically, Article I, §17, which provides:

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue without probable cause shown by affidavit, particularly describing the place to be searched and the person or thing to be seized.

12. This provision of the Idaho Constitution is self-executing and does not require notice under the Governmental Immunity Act.

13. This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a) and Federal Rule of Civil Procedure 18(a), because they arise from the same case or controversy as Plaintiffs' federal claims enumerated above.

## FACTUAL ALLEGATIONS

14. On October 19, 2010, at approximately 6:45 a.m., while it was still dark, Lemke and various unknown federal and state agents abruptly and aggressively entered Joel and Stacey Robison's ("Robisons," "Mrs. Robison," or "Mr. Robison" respectively) home in Rexburg by knocking the home's front door to the ground while they yelled "FBI! Search Warrant!"

15. In the midst of the chaotic operation, the entire Robison family was awakened and immediately paralyzed with fear. As the raid began, two of the Robisons' young children were directly behind the large front door as the agents forced their way into the home. Stray debris from the splintered door struck the Robisons' oldest child, J.R., as agents commenced their search for paperwork and documents related into alleged financial crimes by TLN. At the time of the search (and currently still) Joel and Stacey Robison have no criminal history, are married and have small children living in their home.

16. Once a majority of the agents made their way into the Robisons' home, the family's terror only worsened. Acting with a purpose, searching agents treated the Robisons and their minor children as if they were violent criminals. First, the agents aggressively manhandled Mr. Robison by throwing him up against a wall in a violent manner and then quickly throwing him to the ground thereafter—again nearly injuring one of the Robisons' young children in the demeaning and excessive process.

5

17. Mrs. Robison, watching the situation in horror, was then asked to sit in a chair next to Mr. Robison while their young children screamed (including a newborn baby) as they were ushered into a separate room away from their mom and dad.

18. Eventually, the family was asked to leave the home altogether. Presumably, by that time, the agents realized that they had received incorrect information about not only the contents of evidence to be found in the Robisons' home, but also about the threat of danger posed by those living there. However, as the agents began clearing the home, the Robisons' oldest child (aged 7), still stricken with debilitating fear, desperately holed himself up in another part of the house and quietly wet himself while he waited for his horrible fate at the hands of these unknown armed intruders.

19. In the almost two years since the raid, many of the federal agents who descended upon the Robison's home remain nothing more than a painful blur in their memory; however, they particularly remember the conduct of the one of the agents, Lemke, then an investigator with the DOI. Prior to the raid that day, Lemke had many dealings with Mr. Robison and TLN. During the search, Lemke displayed an extraordinary personal animus against the Robisons. In fact, while he ransacked the home, Lemke loudly proclaimed "This is a Ponzi scheme!" To which Mr. Robison replied, "This is not a Ponzi scheme! If you would have taken the time to look into Moses Hawkins [a discredited witness upon whom Lemke had apparently relied] you wouldn't be here!" Hearing the remark, Lemke became visibly upset and began to indiscriminately rummage through the Robisons' personal belongings.

20. Other federal agents, who appeared to be following Lemke's lead in the raid, appeared puzzled by Mr. Robison's protestations to Lemke. Overhearing the dispute, multiple federal agents began to question Lemke about the raid's purpose, arguing with Lemke about whether the information the federal agents had received in pre-search briefings varied dramatically from what they actually encountered inside the home. The internal confusion and disagreement between the agents gave the Robisons the overriding impression that Lemke had misled the assisting federal authorities about the allegations – as well as misleading them about the evidence in support of those allegations and the potential danger the agents would encounter in the home – against Plaintiffs' purportedly illegal activity.

21. After hours of rummaging through the Robison home that morning, agents collected very little evidence from the search. As far as the Robisons know, no evidence of any evidentiary value was obtained during the search.

22. Shortly thereafter, local media outlets carried stories about the raid as well as accounts of raids of TLN's office, as well of an additional residential search of Mr. Robison's father's home. The negative publicity associated with the multiple search warrants has been extremely detrimental to TLN's business.

23. Almost a year later, in September 2011, more information came to light about the improper search operation of the Robison family home.

24. By June 2011, Lemke appeared to be having problems with his employer, the DOI, and was allegedly forced into retirement on June 29, 2011. Thereafter, Lemke filed a civil complaint related to his forced DOI retirement with this Court on September 27, 2011.

7

25. Within the allegations of Lemke's publicly filed complaint against the DOI, he, and others, alleged the facts that formed the basis for the ill-executed searches of October 19, 2010. In fact, in his civil complaint, Lemke sets out not only the background related to the searches, but he also reveals sensitive and protected grand jury information related to the TLN investigation, even though no charges had been filed.

26. In his lawsuit against the DOI, Lemke releases very specific details about the TLN investigation, and offers insights into the deliberative process associated with the United States Attorney's decision to obtain the multiple search warrants that day. Such disclosure is expressly prohibited by the Grand Jury Secrecy laws outlined in Federal Rule of Criminal Procedure 6(e)(2)(B). That rule provides:

> Unless these rules provide otherwise, the following persons must not disclose a matter occurring before the grand jury:
>
> i. a grand juror;
> ii. an interpreter;
> iii. a court reporter;
> iv. an operator of a recording device;
> v. a person who transcribes recorded testimony;
> vi. an attorney for the government; or
> vii. a person to whom disclosure is made under Rule
> viii. 6(e)(3)(A)(ii) or (iii).

27. Cross-deputized as a federal agent assisting in the execution of a federal search warrant on that day, Lemke was a person to whom disclosure was made under Rule 6(e)(3)(A)(ii). Thus, Lemke was obligated to comply with the grand jury secrecy rules cited

above. Instead, Lemke used the protected information for his personal benefit by including it in his civil complaint against the DOI, a clear breach of his obligations under the rule.

28. Moreover, Plaintiffs adamantly dispute the information and allegations against them from Lemke's civil complaint and contend that as a result of the defamatory material contained therein, Plaintiffs have suffered severe damage—both financially and emotionally.

## **FIRST CAUSE OF ACTION**

**(Unlawful Search and Seizure—Against All Defendants)**

29. Plaintiffs incorporate the allegations contained in the preceding paragraphs as if fully set forth herein.

30. Defendants, acting under color of law and under their authority as agents and/or police officers, searched Plaintiffs' homes and businesses without Plaintiffs' permission, a valid search warrant supported by probable cause, and without exigent circumstances.

31. Defendants' actions against Plaintiffs deprived them of their right to be secure in their own home against unreasonable seizures and searches, in violation of the Fourth and Fourteenth Amendment of the Constitution of the United States.

32. A claim based on an invalid search warrant may be based on a claim of judicial deception; that is, Lemke misled the magistrate of this Court when applying for the warrant, and had the magistrate considered all of the facts, she would not have found probable cause in this situation. See Chism v. Wash. State, 661 F.3d 380, 386 (9th Cir. 2011).

33. On information and belief, this Court issued a search warrant based upon information that was fabricated and/or made in bad faith. On information and belief, Lemke also

gave other agents information that was false, which resulted in an unreasonable execution of the search warrant as described above.

34. Plaintiffs informed Defendants that had they obtained truthful facts the search would have not been necessary. Therefore, the acts of Defendants were insufficient to justify a reasonable belief that Plaintiff had committed any offense, and Defendants' actions were unwarranted, malicious and outrageous.

35. Plaintiff was deprived of liberty and property, without legal authority, including, without limitation, a proper and truthful search warrant, in violation of the right to free of unreasonable searches and seizures under the Fourth Amendment of the United States and Idaho Constitutions.

36. As a direct and proximate result of Defendants' outrageous conduct, Plaintiffs suffered significant injuries and damages including, but not limited to, property damage and severe mental and emotional anguish.

37. The violation of Plaintiffs' rights are actionable under 42 U.S.C. § 1983, and Plaintiffs are entitled to judgment against Defendants in an amount to be proven at trial, plus costs and attorney's fees pursuant to 42 U.S.C. § 1988. Defendants' actions, as set forth above, were intentional, wanton, malicious and oppressive, thus entitling Plaintiffs to an award of punitive damages.

## SECOND CAUSE OF ACTION

### (Excessive Force—Against All Defendants)

38. Plaintiffs incorporate the allegations contained in the preceding paragraphs as if fully set forth herein.

39. The United States Supreme Court has set forth a three-part test to determine the reasonableness of using force in a search:

> [T]he reasonableness of the force used in a search [should] be measured against (1) the extent to which the procedure used may threaten the safety of health of the individual, (2) *the extent of the intrusion upon the individual's dignitary interests in personal privacy and bodily integrity,* and (3) the community's interest in fairly and accurately determining guilt or innocence.

See Winston v. Lee, 470 U.S. 754 (1985) (emphasis added).

40. Given the scope of this alleged financial crime investigation, Defendants used excessive force when they unnecessarily knocked the front door of the Robisons' home to the ground, nearly injuring two of the Robisons' young children.

41. Defendants further used excessive force when they unnecessarily and violently threw Mr. Robison up against a wall and then to the ground as his family watched in horror.

42. There were no exigent circumstances in this case that warranted Defendants' actions. They had no reason to believe that any of the Robisons were armed, dangerous, would resist arrest, attempt to flea or pose a threat to himself or Defendants in any way.

43. Defendants' actions imposed a threat to the health and safety of the Robisons' family by using excessive force to enter their home. Defendants had an obligation to assess the situation in the Robisons' home and ensure the health and safety of the individuals in the home.

44. As a direct and proximate result of Defendants' outrageous conduct, Plaintiffs suffered significant injuries and damages including, but not limited to, severe mental and emotional anguish.

45. The violation of Plaintiffs' rights are actionable under 42 U.S.C. § 1983, and Plaintiffs are entitled to judgment against Defendants in an amount to be proven at trial, plus costs and attorney's fees pursuant to 42 U.S.C. § 1988. Defendants actions, as set forth above, were intentional, wanton, malicious and oppressive, thus entitling Plaintiffs to an award of punitive damages.

### THIRD CAUSE OF ACTION

#### (Defamation of Character—Against Defendant Lemke)

46. Plaintiffs incorporate the allegations contained in the preceding paragraphs as if fully set forth herein.

47. On September 28, 2011, Lemke filed his civil complaint against the DOI with this Court. Therein he publicly outlined false claims against Plaintiffs related to the investigation that formed the basis for the ill-executed raid on October 19, 2010.

48. Through this publication, Lemke is responsible for defamation of Plaintiffs' character arising out of publications containing false, misleading and defamatory statements

damaging the valuable reputation, economic relations and good will of the Plaintiffs, both to their individual reputations as well as to the detriment of TLN's business affairs.

49. As a direct and proximate result of Lemke's outrageous conduct, Plaintiffs suffered significant injuries and damages including, but not limited to, severe mental and emotional anguish.

50. The violation of Plaintiffs' rights are actionable under 42 U.S.C. § 1983, and Plaintiffs are entitled to judgment against Lemke in an amount to be proven at trial, plus costs and attorney's fees pursuant to 42 U.S.C. § 1988. Lemke's actions, as set forth above, were intentional, wanton, malicious and oppressive, thus entitling Plaintiffs to an award of punitive damages.

## **FOURTH CAUSE OF ACTION**

**(Intentional Infliction of Emotional Distress—Against Defendant Lemke)**

51. Plaintiffs incorporate the allegations contained in the preceding paragraphs as if fully set forth herein.

52. The outrageousness of Lemke's conduct establishes the intent to inflict intentional emotional distress against Plaintiffs. First, Lemke's conduct was intentional or reckless; second, the conduct was extreme and outrageous; third, there was a causal connection between wrongful conduct and Plaintiffs' emotional distress; and fourth, the emotional distress was severe. Spence v. Howell, 126 Idaho 763, 774, 890 P.2d 714, 725 (1995)

53. Defendants, who used excessive force in their searches of Plaintiffs' property, were driven by information that was falsely concocted, or otherwise exaggerated, by Lemke.

13

54. On information and belief, Lemke also knowingly gave false or exaggerated information to a United States Magistrate Judge, which resulted in an invalid search warrant, devoid of probable cause.

55. On information and belief, Lemke also knowingly gave false information to all Defendants about Plaintiffs' background in order to inflict distress upon Plaintiffs.

56. Defendants had a duty to recognize that they "exercise ordinary care to prevent unreasonable, *foreseeable* risks of harm to others." Johnson v. McPhee, 210 P. 3d 563 (Idaho App., 2009) (internal citations omitted)). Lemke's conduct descried herein was undertaken by Lemke in circumstances where a reasonable person would know that such conduct would cause severe emotional distress.

57. Lemke's conduct toward Plaintiffs was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality.

58. As a result of Lemke's misdirection, other Defendants engaged in extraordinary, unnecessary, forceful behavior that caused serious emotional harm to Plaintiffs, and to the fragile individuals in Stacey and Joel Robison's home, namely their young children.

59. As a direct and proximate result of Lemke's outrageous conduct, Plaintiffs suffered significant injuries and damages including, but not limited to, severe mental and emotional anguish.

60. The violation of Plaintiffs' rights are actionable under 42 U.S.C. § 1983, and Plaintiffs are entitled to judgment against Lemke in an amount to be proven at trial, plus costs and attorney's fees pursuant to 42 U.S.C. § 1988. Lemke's actions, as set forth above, were

14
COMPLAINT
1205077v2

intentional, wanton, malicious and oppressive, thus entitling Plaintiffs to an award of punitive damages.

## JURY DEMAND

Plaintiffs request a jury trial on all issues in this case.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1. For general compensatory damages in an amount to be proven at trial;

2. For special damages as are shown at trial;

3. For punitive damages against named individuals as may be allowed by law;

4. For pre-judgment interest on the damages assessed by the jury's verdict, as allowed by law;

5. For Plaintiffs' costs and reasonable attorney's fees incurred herein pursuant to 42 U.S.C. § 1988; and

6. For such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 19th day of October, 2012.

RAY QUINNEY & NEBEKER, P.C.


*/s/ Michael D. Mayfield*
Michael D. Mayfield
Brett L. Tolman
John W. Mackay
*Attorneys for Plaintiffs*